IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| ) | |
| vs.  ) | CRIMINAL NO. 08-00327-CG |
| ) | |
| A. SAMUEL KELLEY, II, et al.,  ) | |
| ) | |
| Defendants.  ) | |

## ORDER

This matter is before the court on the motions to dismiss Count 96 of the indictment filed by defendants Branch (Docs. 230, 233, 249, 252), Samuel Kelley (Docs. 239, 245), Jason Kelley (Docs. 241, 242), and Silvio (Docs. 268, 271), the motions to dismiss the substantive money laundering counts (Counts 97 through 196) filed by defendants Samuel Kelley (Doc. 234), Jason Kelley (Doc. 236), and Silvio (Doc. 273), and the response thereto filed by the United States (Doc. 320). For the reasons stated herein, the defendants' motions to dismiss Count 96 and the defendants' motions to dismiss the substantive money laundering counts (Counts 97 through 196) are due to be **DENIED**.

## I.  Background

The moving defendants, through separate motions, seek dismissal of Count 96 of the indictment. Count 96 of the indictment, which is titled "Conspiracy to Commit Money Laundering," states, in relevant part:

> ... the defendants ... did knowingly combine, conspire, and agree with each other and with other persons ... to commit offenses against the United States in violation of Title 18, United States Code, Section 1956, to wit:
> To knowingly conduct and attempt to conduct, and aid and abet the conducting of financial transactions affecting interstate and foreign commerce, which involved the proceeds of a specified unlawful activity, namely, the dispensing and distribution of anabolic steroids, Schedule III controlled

>substances, outside the usual course of professional practice and not for a legitimate medical purpose with the intent to promote the carrying on of the specified unlawful activity, and that while conducting and attempting to conduct and aiding and abetting the conducting of such financial transactions knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, contrary to Title 18, United States Code, Sections 1956(a)(1)(A)(i) and 2.

Count 96 also contains a section entitled "Manner and Means" which states, in summary, that it was part of the conspiracy that money derived from the sale and distribution of anabolic steroids, including profits generated from the sale and distribution, would be deposited into accounts at financial institutions in several states and that these "narcotic" proceeds, "including profits generated from the sale of anabolic steroids" were transported and transmitted to other places within and outside the United States.  It is further alleged in this section that it was part of the conspiracy that financial transactions were conducted with and by Applied Pharmacy Services, Inc. ("APS") for the purpose of purchasing, acquiring, possessing, distributing and dispensing anabolic steroids, as well as paying dividends to the shareholders of APS, and that the funds involved in these transactions consisted of proceeds from the sale of controlled substances, including profits generated from the sale of anabolic steroids.

Counts 97 through 196 of the indictment, which is entitled "Money Laundering," state, in relevant part:

>the ... defendants did knowingly conduct and attempt to conduct, and aid and abet the conducting of financial transactions affecting interstate commerce ... totaling approximately $2 million which involved the proceeds of a specified unlawful activity, that is, the distribution and dispensing ... of anabolic steroids, Schedule III controlled substances, outside the usual course of professional practice and not for a legitimate medical purpose, with the intent to promote the carrying on of the specified unlawful activity, and that while conducting and attempting to conduct and aiding and abetting the conducting of such financial transactions knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, contrary to Title 18, United States Code, Sections

1956(a)(1)(A)(i) and 2.

Counts 97 through 196 consist of a chart detailing 100 alleged money laundering transactions. The chart sets forth the date, defendant, financial institution, check number and specific amount related to each transaction.

All of these counts incorporate, by reference, the Introduction section of the indictment (paragraphs 1 through 20) which details the alleged illegal drug distribution network, the defendants and their alleged roles in the network, the specific controlled substances allegedly involved, and relevant provisions of the Controlled Substances Act.

The defendants seek dismissal of Count 96, the conspiracy count, and Counts 97 through 196, the substantive money laundering counts, on the grounds that: (1) the indictment does not sufficiently allege the "promotion" element of the money laundering charge; (2) the allegedly laundered funds are not "proceeds" under 18 U.S.C. §1956, as that term was defined by the United States Supreme Court in United States v. Santos, 128 S. Ct. 2020 (2008); and (3) the use of the term "narcotics proceeds" in one sentence of the indictment infringes upon the defendants' Fifth Amendment right to not be held to answer for a felony, unless on indictment of a grand jury.

**II.  Analysis**

    **A.  Sufficiency of the Indictment**

In United States v. Walker, 490 F.3d 1282 (11th Cir. 2007), the Eleventh Circuit discussed sufficiency of an indictment:

> The indictment must contain a "plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c).  An indictment is sufficient if "[i]t (1) presents the essential elements of the charged offense, (2) notifies the accused of the charges to be defended against,

> and (3) enables the accused to rely upon a judgment under the indictment as a bar against double jeopardy for any subsequent prosecution for the same offense." An indictment's sufficiency is determined from its face. An indictment that tracks the language of the relevant statute is sufficient, as long as it also provides a statement of facts and circumstances that give notice of the offense to the accused.

490 F.3d at 1296 (citations omitted).

In this case, the defendants contend that the indictment is insufficient because it does not allege essential facts setting out how the dividend payments described in Counts 97 through 196 promoted the carrying on of the alleged unlawful activity. The defendants claim that "there is no factual allegation that such transactions were intended to further, or 'promote,' the illegal activity." (Doc. 234 at p. 4).

Count 96 alleges that the defendants conspired "to knowingly conduct ...financial transactions ...which involved the proceeds of a specified unlawful activity, that is, the distribution and dispensing ... of anabolic steroids ... with the intent to promote the carrying on of the specified unlawful activity ..." Likewise, paragraph 30 of the substantive money laundering counts allege that "the defendants did knowingly conduct ... financial transactions ... which involved the proceeds of a specified unlawful activity, that is, the distribution and dispensing ... of anabolic steroids ... with the intent to promote the carrying on of the specified unlawful activity ...." The indictment also contains allegations that "[i]t was part of the conspiracy that money and funds derived from the sales of controlled substances ... would be deposited ... into accounts maintained at financial institutions" in several states and that it was "part of the conspiracy that financial transactions" involving the proceeds from the sale of anabolic steroids would be "conducted with and by Applied Pharmacy Services ... for the purpose of purchasing, acquiring, possessing, distributing and dispensing anabolic steroids, as well as paying dividends

to the shareholders of Applied Phamacy Services ...."  As noted above, Counts 97 though 196 provide detailed information concerning 100 dividend payments.

The issue before this court is whether these allegations, when considered with other paragraphs in the indictment that describe the specified unlawful activity, in detail, are sufficient to notify the defendants of the charges to be defended against and will enable the defendants to rely upon a judgment under the indictment as a bar against double jeopardy.  "An indictment is not insufficient merely because some necessary allegation was stated with less specificity than might have been used."  United States v. Sutherland, 656 F.2d 1181, 1197 (5th Cir. 1981).  "The sufficiency of an indictment is determined by practical, not technical, considerations."  Id.  In considering the defendants' arguments, the court is mindful of the fact that "[t]here is no summary judgment procedure in criminal cases, [n]or do the rules provide for a pre-trial determination of sufficiency of the evidence."  United States v. Critzer, 951 F.2d 306, 307 (11th Cir. 1992).

Having carefully reviewed the indictment, the court finds that the indictment does sufficiently allege that financial transactions involving proceeds from an unlawful activity were intended to promote the carrying on of the unlawful activity.  The indictment puts the defendants on notice that the government intends to prove that the payment of dividends to certain of the defendants was done with the intent to promote the carrying on of the unlawful activity, that is, the illegal distribution and dispensation of a controlled substance.  The government is not required to set forth all of the evidence in support of the allegations or to explain its theory of the case in the indictment.  The indictment must only set forth the essential elements of the offense, notify the defendants of the charge to be defended against, and enable the defendant to rely upon

a judgment as a bar against double jeopardy. "While the government will have to show at trial that the proceeds were obtained 'with the intent to promote the carrying on of' a [specified unlawful activity], that showing is a matter of proof, not of the indictment's sufficiency." See United States v. Bitzur, 1996 WL 665621, *3 (S.D.N.Y. Nov. 18, 1996)(holding that an indictment alleging money laundering charges was sufficient even though it did not contain specific facts delineating the specified unlawful activity).

### B. Santos Argument

The defendants contend that Count 96 of the indictment should be dismissed because the laundered funds alleged in the indictment are not "proceeds" as that term was defined in United States v. Santos, 128 S. Ct. 2020 (2008). Santos involved allegations of money laundering in which the "specifed unlawful activity" was an illegal gambling business. In Santos, a four-justice plurality found that the term "proceeds" could be interpreted as either "profits" or "gross receipts," and therefore, under the rule of lenity, held that "proceeds" would be interpreted as "profits." Id. at 2023-25. The concurring opinion, while agreeing with the holding, adopted a much narrower mandate. After considering the legislative history, Justice Stevens concluded that "[t]he revenue generated by a gambling business that is used to pay the essential expenses of operating that business is not 'proceeds' within the meaning of the money laundering statute." Id. at 2033.

In a recent case, the Eleventh Circuit held that the Santos holding has "limited precedential value" and refused to extend the holding to a money laundering case in which the proceeds came from drug trafficking. United States v. Demarest, ___ F3d ___, 2009 WL 1606937, *8 (11th Cir. June 10, 2009).

> "When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds ....'" The narrow holding in Santos, at most, was that the gross receipts of an unlicensed gambling operation were not "proceeds" under section 1956, but there is no evidence that the funds Demarest laundered were gross receipts of an illegal gambling operation. The evidence instead established that the laundered funds were the proceeds of an enterprise engaged in illegal drug trafficking.

Id. (quoting Marks v. United States, 430 U.S. 188, 193 (1977)).

In this case, as in Demarest, there is no allegation that the laundered funds were gross receipts of an illegal gambling operation. Instead, the indictment alleges that the laundered funds were proceeds of the illegal distribution and dispensation of a controlled substance. Accordingly, under the authority of Demarest, the court rejects the defendants' argument that the laundered funds alleged in the indictment are not proceeds. Morevoer, the court notes that the indictment repeatedly refers to at least a portion of the proceeds involved as "profits generated from the sale of anabolic steroids." Based on the foregoing, the court holds that the indictment has sufficiently alleged "proceeds."[1]

### C.  Use of Term "Narcotics Proceeds"

The defendants also contend that Count 96 should be dismissed because one sentence in the "Manner and Means" section of that count states that "[i]t was further a part of the conspiracy that *narcotics* proceeds, including profits generated from the sale of anabolic steroids, would be and were transported...." (Doc. 4-3 at p.22 (emphasis added)). Without any case

---

[1] Both the defendants and the government have recognized that Congress recently amended §1956 to add a paragraph which states that the term"proceeds" means "any property derived from or obtained or retained, directly or indirectly, though some form of unlawful activity, including the gross receipts of such activity." 18 U.S.C. §1956(a)(9).

support, the defendants argue that the improper use of this term of art leads to the conclusion that the grand jury was not properly instructed by the government on the law regarding what constitutes "narcotics" proceeds. The defendants have not argued that the use of this term has confused them as to what the charges are against them or that use of the term has prejudiced them in any way.

The government admits that the use of the term "narcotics" may have been inartful, but asserts that it was a scrivener's error. After reviewing the 33-page indictment and only finding the term "narcotics" to have been used once, the court believes that the use of the term was a careless scrivener's error. Even a cursory review of the indictment reveals that the charges contained therein concern the alleged illegal sale of anabolic steroids, and not narcotics. As discussed above, "[t]he validity of an indictment must be determined by practical, not technical, considerations." United States v. Gallipoli, 599 F.2d 100, 103 (5th Cir. 1979). Although the use of the term "narcotics" may have been inartful, "there can be no reasonable question as to [the] meaning" of the paragraph in which it was used or to the meaning of the indictment as a whole. Id. The defendants have alleged no prejudice from the use of the term. Therefore, the court finds that this scrivener's error is not grounds for dismissal of Count 96. See United States v. Wall, 285 Fed. Appx. 675, 684 (11th Cir. 2008)(holding that, absent prejudice, a scivener's error in the indictment is not grounds for reversal).[2]

**III Conclusion**

---

[2] In their motions to dismiss Count 96, the defendants request that the court order disclosure of the minutes of the grand jury for review to see if there is any evidence that would sustain the allegation of narcotics proceeds. Having found the use of the term "narcotics" to have been a scrivener's error, the court denies this request.

Accordingly, for the reasons stated herein, the moving defendants' motions to dismiss are **DENIED**.

**DONE and ORDERED** this 29th day of July, 2009.

    /s/   Callie V. S. Granade
CHIEF UNITED STATES DISTRICT JUDGE